IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALVATORE TAIBI,<br><br>   *Plaintiff,*<br><br> v.<br><br>BOROUGH OF SLATINGTON,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 18-00385 |

**PAPPERT, J.**                              November 26, 2018

### MEMORANDUM

  While on disability leave as a result of an injury sustained in the line of duty, Sergeant Salvatore Taibi (presumably of the Slatington, Pennsylvania Police Department) sued the Borough of Slatington for violating § 504 of the Rehabilitation Act. After the Borough moved to dismiss Taibi's Complaint for failure to state a claim under Rule 12(b)(6), Taibi filed an Amended Complaint.

  In his amended pleading, Taibi again fails to allege that the Slatington Police Department was at any relevant time a recipient of federal financial assistance, as required under the Rehabilitation Act. Even if he had, Taibi fails to state a claim for any form of discrimination or failure to accommodate. Specifically, he acknowledges that the Borough hasn't fired him or in any way prevented him from doing his job. Indeed, he remains on total disability leave, collecting his pay and benefits under Pennsylvania's Heart and Lung Act. He also fails to state any claim for failure to accommodate, largely because he does not identify the position he is qualified to perform with an accommodation. He merely seeks to be placed on "light duty," which

1

would appear to mean a "desk job," but he does not state that such an opportunity exists with the Police Department.

The Borough filed a Motion to Dismiss the Amended Complaint which the Court not surprisingly grants, dismissing the case with prejudice.

I

A

Taibi has been employed by the Borough as a police officer since 1991, rising to the rank of sergeant. (Am. Compl. ¶¶ 3–5, ECF No. 9.) On July 20, 2012, Taibi fell off a porch while on duty. (*Id.* at ¶ 7.) He tore his meniscus, bruised his ribs and injured his lower back. (*Id.* at ¶ 8.) As a result, Taibi has been out on disability leave pursuant to the Pennsylvania Heart and Lung Act.[1] (*Id.* at ¶ 9.)

In August of 2017, Taibi and the lawyer handling his Heart and Lung Act claim were called into a meeting with the Slatington township manager and the borough solicitor. (*Id.* at ¶ 10.) Taibi alleges that "it was strongly implied . . . that consideration was being given" during that meeting to terminating his employment. (*Id.* at ¶ 11.) Taibi claims that on September 28, 2017, the Borough required him to be medically

---

[1] The Heart and Lung Act covers public employees "engaged primarily in police work, firefighting, or other jobs involving public safety . . . [and] was created to ensure that, if these employees were injured or otherwise disabled in the course of carrying out their hazardous duties, they would be guaranteed continued full income until their return to duty." *City of Erie v. W.C.A.B. (Annunziata)*, 838 A.2d 598, 602 (Pa. 2003). Since the Heart and Lung Act grants full compensation and continuation of employee benefits to eligible employees, it is "more generous towards injured employees than the Workers' Compensation Act." *Id.* at 603. "The Act provides compensation only for persons who are temporarily incapacitated and does not apply where disability is total or permanent." *Brandt v. Pa. State Police*, 632 A.2d 986, 987 (Pa. Commw. Ct. 1993) (citations omitted).

2

examined for a second time by Dr. Walter Finnegan "in an attempt to justify having [Taibi] declared unfit for any duties." (*Id.* at ¶¶ 14, 22.) Taibi believes that he "began receiving threats of the imminent demise of his employment, based upon the fact that he merely had to remain out of work on Heart and Lung leave." (*Id.* at ¶ 28.) He asserts that the Borough has "improperly used . . . [his] health issues to avoid reinstating to light duty an officer who deserves to be reinstated." (*Id.* at ¶ 17.) Taibi wants the Court to permanently enjoin the Borough from its "discriminatory behavior" and compensate him for "all benefits [he] would have received" if he had been "returned to light duty." (*Id.* at ¶ 44 & Prayer for Relief.)

B

Taibi filed his original Complaint in the Lehigh County Court of Common Pleas. (Compl., ECF No. 1.) After removing the case to federal court, the Borough moved to dismiss Taibi's Complaint for failure to state a claim, arguing that Taibi failed to allege that a "program" within the Borough received federal financial assistance. (Notice of Removal, ECF No. 1; Mot. Dismiss at 4, ECF No. 5.) Like its predecessor, Taibi's Amended Complaint is, to be charitable, a mishmosh of repetitive, inherently contradictory and generally nonsensical allegations. It is difficult to discern exactly what Taibi is alleging or what laws the Borough has transgressed, particularly since Taibi states that the Borough has yet to even do anything to Taibi. Moreover, although Taibi requests to "return to light duty," he fails to define that term, what positions might exist within the Police Department that fit that definition or how he might be qualified for such a position considering his "disabilities . . . impact[] major life activities . . . including walking and working." (Am. Compl. ¶¶ 16, 30.) He nonetheless

3

asserts, without any factual support, that "she [sic] could perform the essential functions of his job," whatever that might be, with the Borough "with a reasonable accommodation." (*Id.* at ¶ 31.) In any event, the Court construes the Amended Complaint to attempt to state a claim for discrimination or failure to accommodate.

The Amended Complaint adds to the initial Complaint two paragraphs—each consisting of one sentence—and two exhibits which purportedly support the new arguments. Specifically, Taibi now states that "[t]he Defendant is a recipient of federal funds, as evidence [sic] by Exhibit 'A' and Exhibit 'B' attached hereto." (*Id.* at ¶ 45.) Exhibit A appears to be an online version of an article from an unidentified newspaper from 2009 that describes how the Borough is replacing its sewer system using over $7 million received from a Pennsylvania infrastructure investment authority. (*Id.*, Ex. A.) Exhibit B is a 2014 draft fiscal plan for Lehigh County's Department of Community and Economic Development. (*Id.*, Ex. B.) Taibi provides no explanation as to how these documents offer proof of federal financial assistance, merely stating that "The federal funds received by the Defendant include funds received pursuant to The American Recovery and Reinvestment Act of 2009 (ARRA) (Pub.L. 111-5), nicknamed the Recovery Act, a stimulus package enacted by the 111th U.S. Congress and signed into law in February 2009." (*Id.* at ¶ 46.)

In its present Motion to Dismiss, the Borough renews its argument that Taibi fails to allege facts which could show that it received federal financial assistance. The Borough argues that the relevant entity to consider with respect to the federal funding question is its Police Department—not the entire Borough itself—and that the two sources of federal funding Taibi references in the exhibits to his Amended Complaint do

4

not establish that the Police Department is subject to the Rehabilitation Act. (Mot. Dismiss at 6, ECF No. 13.) The Borough also asserts that Taibi does not sufficiently allege that he has been discriminated against or that his employment has been affected in any way. (*Id.* at 10–13.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

Both the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 are civil rights laws that protect individuals with disabilities from discrimination. The substantive standards for a claim under the Rehabilitation Act are in many respects identical to those governing a claim under the ADA.[2] An important difference between the two laws, however, is that the Rehabilitation Act is "applicable only to federal employers and employers who receive federal funding," whereas the ADA covers all other businesses and entities, including state and local governments. *Shiring v. Runyon*, 90 F.3d 827, 830 (3d Cir. 1996).

A

Section 504 of the Rehabilitation Act provides in relevant part: "No otherwise qualified handicapped individual . . . shall solely by reason of his handicap, be excluded

---

[2]   *See Bragdon v. Abbott,* 524 U.S. 624, 631 (1998) (finding that determination of "disability" is the same under the ADA and the Rehabilitation Act); *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007) ("The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act applicable to federal employers and to employers receiving federal funding."); *Deane v. Pocono Med. Ctr.,* 142 F.3d 138, 149 n.13 (3d Cir. 1998) (en banc) (stating that interpretations of "reasonable accommodation" under the Rehabilitation Act are relevant to the analysis of the ADA because "Congress amended the section of the Rehabilitation Act defining 'reasonable accommodation' to incorporate the standards of the ADA").

from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "By its terms § 504 limits its coverage to the 'program or activity' that 'receiv[es]' federal financial assistance. At the outset, therefore, § 504 requires us to identify the recipient of the federal assistance." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 604 (1986). The Court thus addresses two initial questions: (1) whether the relevant entity is the Borough or its Police Department and (2) whether Taibi has sufficiently pled that the relevant entity received federal funds.

i

Taibi seems to contend that if any program or activity of the Borough receives any federal funds for any purpose at any time, the Rehabilitation Act applies at all times to all aspects of the Borough's operations. (Resp. Opp'n at 3–4, ECF No. 14.) Taibi misunderstands the scope of "program or activity" under § 504. The Rehabilitation Act provides:

> The term "program or activity" means all the operations of—
>  (1)(A) a department, agency, special purpose district, or other instrumentality of a State or local government; or
>  (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government agency) to which the assistance is extended, in the case of assistance to a State or local government;
> . . . any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b)(1)(A–B). Interpreting "program or activity" in the context of Eleventh Amendment immunity, the Third Circuit rejected the argument that an entire state is liable simply because one of its departments or agencies receives or distributes federal funds. *Koslow v. Commw. of Pa.*, 302 F.3d 161, 171 (3d Cir. 2002). There, a former employee sued the Commonwealth of Pennsylvania, corrections officials and the

7

Commonwealth's former and current workers' compensation administrators under the ADA, Rehabilitation Act and Pennsylvania Human Relations Act (PHRA). *Id.* at 164. The court held that, under the Rehabilitation Act, "the state, as a whole, cannot be a 'program or activity'" and that "if the entire state government were subject to § 504 whenever one of its components received federal funds, subsection (b)(1)(B) would be redundant." *Id.* at 171.[3]

In *Yeskey v. Commonwealth of Pennsylvania Department of Corrections*, the Third Circuit looked to Department of Justice regulations implementing § 504 for guidance in defining "program." 118 F.3d 168, 171 (3d Cir. 1997), *aff'd sub nom. Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). The court stated that "program" meant "the operations of the agency or organizational unit of government receiving or substantially benefiting from the Federal assistance awarded, *e.g.,* a *police department* or department of corrections." *Id.* (citing 28 C.F.R. § 42.540(h) (1996)) (emphasis added).

Taibi argues that he need only allege that the Borough as a whole receives federal funds because he is employed by and gets his paycheck from the Borough.

---

[3] The Third Circuit's reasoning is consistent with other circuits determining the meaning of "any program or activity that receives Federal financial assistance" under the Rehabilitation Act. 29 U.S.C. § 794(a); s*ee McMullen v. Wakulla Cty. Bd. of Cty. Comm'rs*, 650 F. App'x 703, 706–07 (11th Cir. 2016) (interpreting that 29 U.S.C. § 794(b)(1)(A) does not apply to the defendant county as a whole but rather to the fire rescue department where the plaintiff volunteer firefighter worked); *Schroeder v. City of Chi.*, 927 F.2d 957, 962 (7th Cir. 1991) ("'Program or activity' was expanded from a specific program or specific activity to 'all the operations' of the university or hospital or other institution that conducted the program or activity . . . [but was not] intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial assistance.").

8

Other circuits have rejected this argument, however. For example, in *Taylor v. City of Shreveport*, police officers employed by the City of Shreveport sued the City and other police officers in their individual and official capacities. 798 F.3d 276, 279 (5th Cir. 2015). The defendants argued that the plaintiffs "failed to allege in their complaint that the 'specific program or activity' with which they are involved—namely, the police department—receives or directly benefits from federal financial assistance." *Id.* at 283. The Fifth Circuit disagreed, finding that "the complaint alleged that the City receives federal funds for the police department" and that the police department is a "specific 'program or activity' within the meaning of the Rehabilitation Act."

Taibi's Amended Complaint fails to allege that the program or activity with which he is involved—the Police Department—received or substantially benefitted from federal financial assistance during the time the Borough purportedly discriminated against him. Although Taibi may be employed by the Borough, he cannot look to funds received by the Borough's departments or agencies unrelated to the Police Department, here funds allegedly received from the federal government through a Commonwealth agency to replace a sewer system, to establish that the Rehabilitation Act applies to his claims.

ii

The Rehabilitation Act does not define "Federal financial assistance," but the regulations do:

> Federal financial assistance means any grant, cooperative agreement, loan, contract (other than a direct Federal procurement contract or a contract of insurance or guaranty), subgrant, contract under a grant or any other arrangement by which the Department provides or otherwise makes available assistance in the form of: (1) Funds; (2) Services of Federal

9

personnel; (3) Real and personal property or any interest in or use of such property . . . .

28 C.F.R. § 42.540(f).

Taibi's Amended Complaint does not contend that the Police Department received federal funds. He alleges broadly that the Borough received funds pursuant to the American Recovery and Reinvestment Act of 2009. (Am. Compl. ¶ 46.) The purported 2009 newspaper article[4] states that "Slatington Borough Authority has over $7 million through the Federal American Recovery and Reinvestment Act stimulus funds administered through PennVEST to pay for the [sewer system replacement] project." (*Id.*, Ex. A.) According to the article, the Borough has "$4.7 million in grants along with another $2.3 million as part of a 20-year, one-percent loan through PennVEST" and the money will "replace or rehabilitate nearly 14.4 miles of aging sewer pipes and will address historic pollution and public health problems caused by storm-water infiltrating and overwhelming the authority's sewage collection and treatment system." (*Id.*) Furthermore, the article states that "the borough received federal funding in the amount of $162,426 to do the work through the office of State Rep. Charles W. Dent through the state Environmental Protection Agency's State and Tribal Assistance Grant Program." (*Id.*) Second, the Draft Fiscal Year 2014 Consolidated Annual Performance Evaluation Report for Lehigh County's Department of Community and Economic Development ("Draft Plan") consists of sixty-seven pages of irrelevant data. None of Taibi's allegations nor his exhibits show that the Police

---

[4] The Borough challenges the article's "credibility." (Mot. Dismiss at 6 n.4.) The document's purported lack of veracity or authentication is immaterial. Taibi fails to state a claim in any event.

Department—and not some water infrastructure project or alternative department—received federal assistance.

Moreover, courts have generally found that discrimination is not actionable under § 504 if it did not occur within the period that an entity received federal financial assistance. *See Bachman v. Am. Soc. of Clinical Pathologists,* 577 F. Supp. 1257, 1262 (D.N.J. 1983) ("Past recipients of federal financial assistance . . . are liable for violations of the Rehabilitation Act which occurred during the time that they were recipients."); *Sharer v. Oregon,* 581 F.3d 1176, 1178 (9th Cir. 2009) ("Defendants argue that [Plaintiff's] section 504 claim fails because [Defendant's organization] was not a 'program or activity receiving Federal financial assistance' at the time of the alleged discrimination. We agree."); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) ("[Defendant] does not dispute that at the time of the purported violation it was receiving federal financial assistance."). Here, Taibi does not even contend that the Police Department (or for that matter the Borough itself) was receiving federal financial assistance during the period of the alleged discrimination, which purportedly began at a meeting in early August 2017 where it was "strongly implied . . . that consideration was being given . . . to terminating [Taibi's] employment." (Am. Compl. ¶ 10.) The exhibits relied upon in the Amended Complaint date back to 2009 and 2014—eight years and three years, respectively, before the time of the alleged discrimination in 2017. (*Id.*, Exs. A & B.)

IV

Even if Taibi could allege that the Police Department received federal financial assistance during the time period covering his allegations in the Amended Complaint, he still fails to state a claim, either for discrimination or for failure to accommodate.

To state a claim of discrimination under the Rehabilitation Act, the plaintiff must show: (1) that he has a disability; (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer and (3) that he was nonetheless terminated or otherwise prevented from performing the job. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).

First and foremost, Taibi does not allege that he was terminated or otherwise prevented from performing his job. To the contrary, he states the he remains "employed as a Police Officer for the Defendant." (Am. Compl. ¶ 4.) He also claims that, short of terminating him, all the Borough allegedly did was "impl[y]" that "consideration was being given" to terminating his employment. (*Id.* at ¶ 11.)

Moreover, Taibi never identifies a position he could perform, with or without a reasonable accommodation. He simply alleges that he is "entitled to reinstatement to light duty." (*Id.* at ¶ 36.) An employer's obligation to provide a reasonable accommodation does not require the employer to create a new job. *Donahue,* 224 F.3d 226, 230 (3d Cir. 2000) (citations omitted). However, "an employer may be required to transfer an employee to an existing position." *Id.* When a plaintiff challenges an employer's failure to transfer (which Taibi seems to be doing), the plaintiff must demonstrate: (1) that there was a vacant, funded position; (2) that the position was at

or below the level of the plaintiff's former job and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation. *Id*.

Taibi does not even allege that there was an appropriate vacant, funded position in the Police Department or that he was qualified to perform its essential duties; he merely references a "light duty" position throughout the Amended Complaint but fails to define what that entails. (Am. Compl. ¶¶ 13, 16, 21, 34, 36, 37.)

V

Federal Rule of Civil Procedure 15 permits a party to amend its pleadings with the court's permission. Fed. R. Civ. P. 15(a)(2). Courts should grant leave to amend when justice so requires unless it would cause undue delay or undue prejudice, the request is in bad faith or a result of dilatory conduct, or if amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Taibi amended once as of right. He has not requested leave to amend his Complaint a second time, and in any event, further amendment would be futile, not to mention very likely in bad faith given the Amended Complaint's frivolity.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.